UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAEL J. STUART,

                            Plaintiff,

               - against -

CLARENCE L. STUART, JR., a/k/a "BUTCH," and
SHIRLEY A. FELDER,

                       Defendants.
-------------------------------------------------------------------x

**OPINION AND ORDER**

No. 12-CV-5588 (CS)

Appearances:

Michael J. Stuart
Weston, Connecticut
Pro Se *Plaintiff*

Robert Fischl
Law Offices of Robert K. Fischl
East Meadow, New York
*Counsel for Defendants*

Seibel, J.

       Before the Court are the Motions to Dismiss, (Docs. 32, 33), and Motions for Judgment

on the Pleadings, (Docs. 26, 29), of Defendants Clarence L. Stuart, Jr. and Shirley A. Felder.[1]

For the following reasons, Defendants' Motions are GRANTED.

## I.    <u>Background</u>

       For the purposes of Defendants' Motions, I accept as true the facts, but not the

conclusions, as set forth in Plaintiff's Third Amended Complaint ("TAC"), (Doc. 22 Ex. A).

       Plaintiff Michael J. Stuart, proceeding *pro se*, brings this action against his older brother,

Clarence L. Stuart, Jr. ("Clarence"), and his brother's girlfriend, Shirley A. Felder, alleging that

---

[1] Defendants filed two Motions to Dismiss and two Motions for Judgment on the Pleadings. All four motions seek dismissal on the same grounds. Because Defendants answered before moving, the proper motion is for judgment on the pleadings. This order disposes of all motions.

Clarence defrauded him and his siblings out of the profits from the Stuart family home.  Plaintiff claims that Clarence leveraged the value of the home to acquire other properties for his and Ms. Felder's personal gain instead of treating the property as part of their mother's estate.  Plaintiff asserts claims for breach of fiduciary duty, conversion, fraud, intentional infliction of emotional distress and an accounting.

On July 24, 1978, Lucille Benjamin Stuart, the mother of Plaintiff, Clarence, and their three siblings – Ronald, Sandra and Margaret – executed a will, which provided that upon her death her property and assets would be distributed one-third to her husband, Clarence Stuart, Sr., and the remainder equally to her five children.  (TAC ¶¶ 2, 7; *see* Doc. 2 Ex. 2.)  Ms. Stuart appointed Plaintiff, Clarence and Margaret as co-executors of her will.  (TAC ¶ 3.)  Clarence retained the original will, while Plaintiff and Margaret each received copies.  (*Id.* ¶ 6.)

When Ms. Stuart executed her will, she and her husband owned the property at issue:  a two-family home located at 109-49 215th Street in Queens, New York.  (*See id.* ¶ 1; Doc. 2 Ex. 1.)  By 1989, her husband had passed away, and she, now destitute and infirm, required full-time medical care.  (TAC ¶ 7.)  Clarence allegedly suggested that she transfer her home to Ronald, who was living with her at the time, and that this transfer would be valid under the Medicaid transfer law.[2]  (P's Opp. 3.)[3]  According to Clarence, this transfer would qualify Ms. Stuart for Medicaid and preserve the home as an inheritance that would be transferred back to her estate upon her death.  (TAC ¶ 8; P's Opp. 3.)  Plaintiff further alleges that Clarence persuaded their mother to appoint him as co-transferee because Ronald was incompetent to manage the home.

---

[2] The relevant law is found at 42 U.S.C. § 1396p(c)(J)(2)(A)(iv).  The mechanics of the law are largely irrelevant for present purposes, and I need not address them here.

[3] "P's Opp." refers to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss.  (Doc. 40.)  I can consider the factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint.  *See Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 448 (S.D.N.Y. 2012).  I find Plaintiff's allegations largely consistent with his Third Amended Complaint and consider them here.

(P's Opp. 3.) Clarence allegedly promised to oversee the sale of the home or the equal distribution of profits if the property were retained as a rental. (*Id.* at 3-4.) On May 24, 1989, Ms. Stuart transferred the property to Ronald and Clarence as joint tenants with rights of survivorship.[4] (TAC ¶ 7; *see* Doc. 2 Ex. 7.)

Ms. Stuart passed away on July 21, 1997, and Clarence served as executor of her estate. (TAC ¶ 9.) Six months later, on January 16, 1998, Clarence allegedly "secretly induced" Ronald to transfer his interest in the property to him.[5] (*Id.* ¶ 10.) Clarence paid Ronald $3,000, Ronald moved out of the home, and Clarence began renting out the property. (*Id.*) Clarence recorded the transfer on March 23, 1998, (*id.* ¶ 11), and informed his siblings, including Plaintiff, of the transfer at a family meeting on or about April 1, 1998, (*id.* ¶ 12). Plaintiff alleges that Clarence "promised to administer the two-family home as an income-producing property and distribute proceeds and profits accordingly to each of the sibling-beneficiaries." (*Id.*) The siblings agreed with Clarence's plan and decided to wait to receive their share of the profits. (*Id.*)

Fourteen years later, Clarence still had not distributed any profits to his siblings. Plaintiff alleges that Clarence engaged in a series of real estate transactions involving the Stuart family home, but kept the profits for himself. On April 8, 1998, Clarence mortgaged the home and used the proceeds to purchase another property in Jamaica, New York. (*Id.* ¶¶ 13-14.) These transactions continued for well over a decade with first Clarence, and then Clarence and Ms.

---

[4] Plaintiff alleges that his mother "established a life estate," (*see* TAC ¶ 7), but the deed recording the transfer to Ronald and Clarence (which Plaintiff attached to his original Complaint) says otherwise, (*see* Doc. 2 Ex. 7). I need not accept Plaintiff's allegation as true because of this contradiction. *See Reisner v. Stoller*, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999) ("To the extent that plaintiffs' allegations are contradicted by . . . exhibits [attached to the complaint], the exhibits control.") (citation omitted). I may also consider the deed, for the fact of what it says, because it is a public record. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss . . . .").

[5] Plaintiff does not specify how Clarence "secretly induced" Ronald to sell him his interest in the home. I can reject Plaintiff's conclusory language on a motion to dismiss, but even if I credited Plaintiff's allegation, dismissal is still proper pursuant to the analysis below because Clarence told Plaintiff and his other siblings about the sale a few months later.

Felder, mortgaging the properties they held in order to purchase additional properties and invest in other businesses.  (*See id.* ¶¶ 15-62.)  At no point did the siblings receive any money from these investments.

Plaintiff contends that Clarence "knowingly made misrepresentations to [him] and [the other] sibling-beneficiaries . . . to lull [them] not to make further inquiries" and "to hide his fraudulent conduct."  (*Id.* ¶ 12.)  These statements included: (1) at a 1998 Christmas meeting, Clarence said "nothing unusual" had occurred with the property and that he was continuing to make repairs, (*id.* ¶ 17); (2) at a Labor Day barbecue in 2000, Clarence said "things were moving very slowly" and he was unsure when the property would begin to turn a profit, (*id.* ¶ 20); (3) at a 2001 Christmas meeting, Clarence denied that there was any money available for distribution and alleged that he "was broke" due to upkeep expenses, (*id.* ¶ 24); (4) around July 4, 2001, Clarence denied having any profits and restated his inability to distribute money to his family, (*id.* ¶ 26); (5) at Thanksgiving 2001, Clarence said there was "no activity" going on with the house and he was just "breaking even," (*id.* ¶ 29); (6) in July 2002, Clarence denied having any money to distribute (*id.* ¶ 35); (7) in June 2003, Clarence again denied having any money to distribute, (*id.* ¶ 38); (8) in July 2003, Clarence again denied having any money to distribute and alleged that he was "broke," (*id.*); (9) around July 29, 2007, Clarence denied having any funds to distribute, (*id.* ¶ 59); and (10) throughout 2010, Clarence denied that any funds were available, (*id.* ¶ 61).[6]

Plaintiff filed his *pro se* Complaint on July 18, 2012, (Doc. 2), and filed his Amended Complaint on October 12, 2012, (Doc. 6).  The parties appeared before me for an initial

---

[6] Plaintiff also alleges that Clarence denied his siblings' July 2006 request for $25,000.  (*Id.* ¶ 54.)  This is not a representation or misrepresentation.  Nor are the remaining statements necessarily misrepresentations, because Clarence may very well have lacked cash to distribute from the family home.  The gravamen of the alleged fraud is that he used the equity in the home; Plaintiff does not allege that it in fact generated rental profits that Clarence kept for himself.  For purposes of the Motion, however, I will assume that these statements were misrepresentations.

conference on February 21, 2013.  Defendants indicated their intention to move to dismiss the

Amended Complaint on the ground that the statute of limitations for Plaintiff's claims had

expired.  I granted Plaintiff leave to amend to explain why his claims were not time-barred.

Plaintiff thereafter filed a Second Amended Complaint, (Doc. 21), and ten days later, a Third

Amended Complaint, (Doc. 22).

## II.    Discussion

### A.    Legal Standard

Defendants move to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.[7]  The standard of review for a motion for judgment on the pleadings pursuant to Rule

12(c) is the same as that for a Rule 12(b)(6) motion to dismiss.  *See Patel v. Contemporary*

*Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

---

[7] Defendants also cite Rule 56 as an avenue for dismissal.  I need not convert this motion into one for summary judgment because Defendants have not presented material outside the pleadings for the Court's consideration.  *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (court may convert motion to dismiss into one for summary judgment when parties present material outside pleadings).

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). But while pleadings of a *pro se* party should be read "to raise the strongest arguments that they suggest," *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted), dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements, *see Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997); *accord Honig v. Bloomberg*, No. 08-CV-541, 2008 WL 8181103, at *4 (S.D.N.Y. Dec. 8, 2008), *aff'd*, 334 F. App'x 452 (2d Cir. 2009) (summary order).[8]

B.    <u>Motion to Dismiss</u>

Plaintiff alleges that Defendants defrauded him and his siblings out of the profits from the family home, and from all financial transactions deriving from the property. He brings claims

---

[8] Copies of all unpublished decisions cited herein will be sent to Plaintiff.

for breach of fiduciary duty, conversion, fraud, intentional infliction of emotional distress and an

accounting.[9]   Defendants argue that Plaintiff's claims should be dismissed because they are

untimely and because Plaintiff has failed to state a claim upon which relief may be granted.  (Ds'

Aff. ¶ 1.)[10]   Defendants contend that the statute of limitations has long expired, and that Plaintiff

knew of any wrongdoing as early as 1998, when Clarence told him that Ronald had sold

Clarence his interest in the home.  (Id. ¶¶ 6, 7.)  Defendants also contend that Plaintiff has no

interest in the property because the property was removed from Ms. Stuart's estate after the 1989

transfer to Ronald and Clarence.  (Id. ¶ 8.)

Under New York law, an action based upon fraud must be brought within the greater of

six years from the commission of the alleged fraud, or two years from when a plaintiff was aware

or should have been aware of enough facts such that he could have discovered the fraud with

reasonable diligence.  N.Y. C.P.L.R. §§ 203(g), 213(8); see Gonzales v. Nat'l Westminster Bank

PLC, 847 F. Supp. 2d 567, 570 (S.D.N.Y. 2012).  Claims for breach of fiduciary duty that are

based upon fraud are subject to the same limitations period.  See Cohen v. S.A.C. Trading Corp.,

711 F.3d 353, 361 (2d Cir. 2013).[11]

The alleged fraud in this case – Clarence's acquisition and misappropriation of the family

home – arguably first occurred in 1989, when Clarence gained partial control of the home and

---

[9] To the extent that Plaintiff asserts 42 U.S.C. § 1396p[c](J)(2)(A)(iv) as a basis for these claims or for jurisdiction, (see TAC 1, 2), I find this argument to be without merit.  Plaintiff has not alleged how Clarence violated this statute, nor does the section provide for a private right of action against a private party.  Cf. Wong v. Daines, 582 F. Supp. 2d 475, 479 n.2 (S.D.N.Y. 2008) (finding that 42 U.SC. § 1983 provides a federal right of action to enforce § 1396p(d)(4)(A) [a different section of the statute] against government officials).

[10] "Ds' Aff." refers to Robert K. Fischl's Affirmation in Support of Defendant's Motion to Dismiss.  (Doc. 34.)

[11] I need not separately address Plaintiff's claims for conversion or intentional infliction of emotional distress because these claims have shorter limitations periods.  Under New York law, a conversion claim has a three-year statute of limitations, see N.Y. C.P.L.R. § 214(3); Vigilant Ins. Co. of Am. v. Housing Auth., 87 N.Y.2d 36, 44-45 (1995), and an intentional infliction of emotional distress claim has a one-year statute of limitations, see N.Y. C.P.L.R. § 215(3); Grimes v. Fremont Gen. Corp., 933 F. Supp. 2d 584, 612 (S.D.N.Y. 2013).  Plaintiff's accounting claim depends upon the success of his fraud or breach of fiduciary duty claim, and because, as discussed below, those claims are time-barred, Plaintiff's accounting claim fails as well.

promised to transfer the home back to his mother's estate upon her death.  (*See* P's Opp. 3.)

Defendants (and Plaintiff in his Third Amended Complaint) seem to identify the fraud as

occurring nine years later in 1998, when Clarence induced Ronald to sell him his interest in the

property.  (*See* TAC ¶ 10; Ds' Mem. ¶ 7.)  Clarence recorded the sale on March 23, 1998, and

told Plaintiff and the other siblings about the sale on or about April 1, 1998.  (*See* TAC ¶¶ 11-

12.)  Using the latest of the dates – April 1, 1998, when Plaintiff became aware that Clarence had

not transferred the house back to their mother's estate and in fact put the home entirely in his

own name – Plaintiff had until April 1, 2004 (six years later) to file his complaint.  Plaintiff did

not bring this action until July 18, 2012, however, more than fourteen years after the sale

occurred and eight years after the limitations period had expired.

Plaintiff argues that the doctrine of equitable tolling or equitable estoppel should apply to

prevent dismissal of his claims as time-barred.  He contends that he only discovered his brother's

fraud in January 2011, (*id.* at 1), and that his brother "knowingly made misrepresentations to

[him] and [the other] sibling-beneficiaries . . . to lull [them] not to make further inquiries" and

"to hide his fraudulent conduct," (*id.* ¶ 12).  Plaintiff asserts that after many years of trusting

Clarence, he finally "peeked behind the curtain" in 2011 and learned what Clarence was doing.

(P's Opp. 1.)

"Under New York law, the doctrines of equitable tolling or equitable estoppel may be

invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud,

misrepresentations or deception to refrain from filing a timely action."  *Abbas v. Dixon*, 480 F.3d

636, 642 (2d Cir. 2007) (internal quotation marks omitted).  Equitable tolling applies where a

defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action.

*See Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002).  A plaintiff must establish that

the defendant wrongfully concealed material facts, which prevented plaintiff's discovery of the nature of the claim, and that plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012).  Equitable estoppel, on the other hand, permits the tolling of the statute of limitations in extraordinary circumstances where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused him to delay in bringing suit.  *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997).[12]  Under either doctrine, the plaintiff must show that his failure to act was not due to lack of diligence on his part during the period he seeks to toll.  *Id.*

Due diligence on the part of the plaintiff is essential where he or she seeks relief from the statute of limitations.  *Ross v. Louise Wise Servs., Inc.*, 812 N.Y.S.2d 325, 333 (App. Div. 2006).  The determination of the time by which a reasonably diligent plaintiff could have discovered a fraud turns on whether a person of ordinary intelligence possessed knowledge of facts from which fraud could be reasonably inferred.  *Rite Aid Corp. v. Grass*, 854 N.Y.S.2d 1, 2 (App. Div. 2008).  If a plaintiff is on notice of potential wrongdoing but takes no steps to investigate further, equitable estoppel does not apply because of a failure of diligence.  *Corp. Trade, Inc. v. Golf Channel*, No. 12-CV-8811, 2013 WL 5375623, at *6 (S.D.N.Y Sept. 24, 2013).

Plaintiff pleads ten statements from Clarence in an attempt to justify equitable tolling or equitable estoppel.  These statements are mostly comments from Clarence (1) that nothing was happening with the home, or (2) that he had no money to distribute.  (*See* TAC ¶¶ 20, 24, 26, 29,

---

[12] Plaintiff also refers to the doctrine of fraudulent concealment.  (*See* TAC ¶ 12.)  Fraudulent concealment requires a plaintiff to show wrongful concealment by the defendant, failure of the plaintiff to discover the operative facts during the limitations period, and the plaintiff's due diligence.  *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986).  Equitable estoppel and fraudulent concealment are analyzed similarly under New York law, *see Meridian Int'l Bank Ltd. v. Republic of Liberia*, 23 F. Supp. 2d 439, 446 n.4 (S.D.N.Y. 1998), and I need not address them separately.

35, 38, 38, 59, 61.)  These statements plausibly were intended to lull Plaintiff into thinking he would eventually be paid, but even accounting for the extra trust one sibling might repose in another, they do not justify a fourteen-year (or even an eight-year) delay in bringing suit.[13] Plaintiff knew in 1998 that Clarence had not returned the house to the estate as promised but rather had taken sole possession of it.  Even if Clarence's 1998 promise of forthcoming equal distribution, and his subsequent excuses for not making any such distributions, reasonably lulled Plaintiff for a time, when years went by with no follow-through a reasonably diligent plaintiff would have undertaken some inquiry.  *See Dep't of Econ. Development v. Arthur Anderson & Co.*, 747 F. Supp. 922, 944 (S.D.N.Y. 1990) (no equitable estoppel where suspicions aroused but no inquiry made); *Grunfeld v. Kasnett*, 859 N.Y.S.2d 895 (Table), 2008 WL 598351, at *5 (Sup. Ct. Mar. 04, 2008) (letter written fifteen years earlier promising reparations could not reasonably have lulled plaintiffs for that entire time).  It simply cannot be said that waiting until 2011 to look into why Clarence had not done what he promised to do in 1998 plausibly shows reasonable diligence on Plaintiff's part.  Moreover, there were long gaps (2003-2007, 2007-2010) where, by Plaintiff's account, Clarence did nothing to lull or mislead him.  *See Poindexter v. Warner/Chappell Music, Inc.*, No. 06-CV-3403, 2009 WL 302064, at *5 (S.D.N.Y. Feb. 9. 2009) (noting "significant gaps in time" for which there was no activity that would justify tolling).

In short, Plaintiff was under an obligation to investigate Clarence's activities long before January 2011.  He could have discovered each of the real estate transactions – they were all matters of public record – and should have been more vigilant in protecting his rights.  Indeed, apparently all Plaintiff did in 2011 was look at public records regarding the house, which he

---

[13] The analysis herein would be the same if the complaint in this case were deemed to relate back to the date of the filing of a similar lawsuit in the Eastern District of New York.  (*Stuart v. Stuart*, No. 12-CV-1595, filed Jan. 16, 2013.)  In light of my disposition, and because Defendants have not raised the issue, I need not address whether that lawsuit, which was dismissed under the "probate exception" to federal subject matter jurisdiction, bars the instant suit under the doctrines of *res judicata* or collateral estoppel.

could have done at any time.  While patience and trust in one's older brother may be reasonable

for a time, waiting eight years beyond the six-year statute of limitations, with only sporadic

empty promises from the brother in that entire period, plainly demonstrates the lack of diligence

that bars equitable relief from the limitations period.  Plaintiff's claims are therefore untimely.[14]

      C.    <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to

amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to

amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman

v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has now amended his complaint three times.  (*See* Docs. 6, 21, 22.)  His second

amendment was in response to my observation that his claims might be time-barred and was

designed to give him the opportunity to explain why the case was not barred by the statute of

limitations.  Plaintiff's failure to fix this deficiency, after being provided with full notice of it, is

alone sufficient ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut. Funds

Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the

plaintiffs have had two opportunities to cure the defects in their complaints, including a

procedure through which the plaintiffs were provided notice of defects in the Consolidated

Amended Complaint by the defendants and given a chance to amend their Consolidated

---

[14] I do not doubt that this result will seem harsh to Plaintiff, and perhaps it is, but it is unavoidable under the law.

Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007). Accordingly, there being no indication that Plaintiff is in possession of facts that could cure the problem, and having already told Plaintiff that his Third Amended Complaint would be his last, (*see* Doc. 23), I decline to grant Plaintiff leave to amend *sua sponte*.

## III.   Conclusion

For the reasons stated above, Defendants' Motions for Judgment on the Pleadings are GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 26, 26, 32, 33), and close the case.

**SO ORDERED.**

Dated:   December 10, 2013
             White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.